FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 0 3 2009

Stephan Harris, Clerk
Cheyenne

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

FLOYD WILKERSON,                    )
                                    )
          Plaintiff,                )
                                    )
          vs.                       )     Case No. 08-CV-115-B
                                    )
                                    )
UNITED STATES DEPARTMENT OF         )
VETERANS AFFAIRS SECRETARY          )
a/k/a JAMES B. PEAKE,               )
                                    )
          Defendant.                )

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

This matter came before the Court on Defendant's Motion for Summary Judgment [#25] and Plaintiff's Motion to Amend Complaint [#26]. A hearing was held on January 7, 2009. Bruce T. Moats appeared on behalf of the Plaintiff, Floyd Wilkerson, and Steven K. Sharpe appeared on behalf of the Defendant. After considering the motion, reviewing the materials on file, and hearing oral arguments, and being fully advised in the premises, this Court FINDS that Defendant's Motion for Summary Judgment should be GRANTED, and Plaintiff's Motion to Amend Complaint should be DENIED. The Court further FINDS and ORDERS the following:

## I.  BACKGROUND

Plaintiff, Floyd Wilkerson, is a resident of Cheyenne Wyoming and is employed by the Department of Veterans Affairs. (Compl. ¶ 1.)  Plaintiff works at the Cheyenne VA Medical Center ("the VA") as a housekeeping aide. (Compl. ¶¶ 11.)  Plaintiff also worked as a housekeeping aid when he began working at the VA in July 2003. (Compl. ¶ 7.)  It was during this time, that the VA experienced a shortage of employees in the boiler plant. (Comp. ¶ 7.)  Plaintiff had experience in this kind of work, and was asked to begin work as a boiler plant operator on a temporary basis.   (Compl. ¶ 7.) Plaintiff worked in the boiler plant for a number of years.   In 2007, however, the administration realized that the Plaintiff had never gone through a physical examination as required by VA directives for boiler plant operators.   The VA then required Plaintiff to have a physical examination performed on February 1, 2007.  (Compl. ¶ 9.)

The physical examination was performed by Nurse Enlow who was also employed by the VA.  During the physical Nurse Enlow noted that the Plaintiff weighed over 300 pounds.  Additionally, the physical results noted that the Plaintiff became winded upon little exertion.  Nurse Enlow also noted that Plaintiff had diabetes on

2

the physical form. Nurse Enlow's report was then forwarded to VA medical officer Dr. James Johnson for final approval. Dr. Johnson became concerned with the results of physical examination. He contacted and discussed the requirements of the job with the Plaintiff's direct supervisor. Dr. Johnson also discovered, through Plaintiff's personal medical records at the VA, that the Plaintiff had poorly controlled diabetes. Based on this information, Dr. Johnson informed the Human Resources Management Officer at the VA, Sandra Willoughby, that the Plaintiff had not passed his physical.

In a letter dated March 21, 2007, Ms. Willoughby informed Plaintiff that he was to be reassigned to housekeeping effective on March 22, 2007. Plaintiff was further informed that he would continue to be paid as a boiler plant operator until April 1, 2007. In the letter, Ms. Willoughby explained that the Plaintiff had not passed his physical, and that he no longer met the environmental requirements for a boiler plant operator as he weighed over 300 pounds and the ladders in the boiler plant were only made to support up to 300 pounds. (Compl. ¶ 11.) Following receipt of this letter, the Plaintiff requested that an accommodation be made for his weight. He requested that the VA purchase ladders that

3

would support his weight. (Compl. ¶ 15.) The VA, however, denied this request. (Compl. ¶ 15.)

After Plaintiff was moved back to housekeeping, he was denied consideration for two other boiler room positions that opened in 2007. (Compl. ¶ 13.) Both of these positions were filled by people younger than the Plaintiff. (Compl. ¶ 16.)

Plaintiff brought suit against the United States Department of Veterans Affairs Secretary, James B. Peake, alleging that the VA had discriminated against him in violation of the Rehabilitation Act. (Compl. ¶¶ 18-23.) Plaintiff also alleges that the VA failed to accommodate Plaintiff's perceived disability also in violation of the Rehabilitation Act. (Compl. ¶¶ 24-27.) Finally, Plaintiff claims that he was unlawfully discriminated against based on his age in violation of the Age Discrimination in Employment Act (ADEA). (Compl. ¶¶ 28-32.) It is with this factual background that the Court turns to the Defendant's Motion for Summary Judgment and Plaintiff's Motion to Amend Complaint.

## II. JURISDICTION AND VENUE

This Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

4

## III. SUMMARY JUDGMENT STANDARD

It is well established that a district court may grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c). The initial burden lies with the moving party to inform the court of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has initially established that there is no genuine issue of fact, the burden shifts to the non-moving party to prove, through specific facts, that a triable issue does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

When determining whether summary judgment is appropriate, the Court must view the evidence in the light most favorable to the non-moving party. Id. at 587. Nevertheless, the non-moving party must present more than "mere assertions and conjecture" to withstand a summary judgment motion. York v. Am. Tel. & Tel. Co., 95 F.3d 948, 955 (10th Cir. 1996). Likewise, "[t]he mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Lawmaster v. Ward, 125 F.3d 1341, 1347

(10th Cir. 1997). In sum, summary judgment is appropriate when the non-movant is unable to present facts in which a reasonable jury could find in his or her favor. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006).

## IV.  DISCUSSION

### A.  Discrimination in Violation of the Rehabilitation Act

Plaintiff claims that the Defendant unlawfully discriminated against him in violation of the Rehabilitation Act by reassigning Plaintiff to a different job paying less.  (Compl. ¶¶ 18-23.) Plaintiff claims that he was perceived as having a disability based on his obesity, and he was placed in another position solely because of this perceived disability.  Defendant, however, claims that the Plaintiff was reassigned because he could not meet the minimum physical requirements of the position.

The Rehabilitation Act of 1973 ("the Act") prohibits discrimination by an entity receiving federal funding against individuals with disabilities.  See 29 U.S.C. § 794 (West 2009). The Act states:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

6

> assistance or under any program or activity conducted by
> any Executive agency or by the United States Postal
> Service.

Id. at § 794(a). To make out a prima facie case for discrimination

in violation of the Act, the Plaintiff must establish the following

elements: "(1) that the plaintiff is disabled under the Act; (2)

that he would be 'otherwise qualified' to participate in the

program; (3) that the program receives federal financial assistance

(or is a federal agency); and (4) that the program has

discriminated against the plaintiff." McGeshick v. Principi, 357

F.3d 1146, 1150 (10th Cir. 2004).

Looking to the first element, this Court acknowledges that the

Tenth Circuit has not yet determined whether obesity is a

disability within the meaning of the law. This Court also

acknowledges that other circuits that have decided this question

have determined that obesity, absent an underlying physical

etiology, is not a disability. See Francis v. City of Meriden, 129

F.3d 281, 287 (2d Cir. 1997) (stating "It would be inconsistent

with these purposes to construe the acts to reach alleged

discrimination by an employer on the basis of a simple physical

characteristic, such as weight."); Andrews v. State of Ohio, 104

F.3d 803, 808 (6th Cir. 1997) (stating "[P]hysical characteristics

7

that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability."). Despite this precedent in other circuits, the Court, without direction from the Tenth Circuit, is hesitant to label obese individuals as disabled. For the sole purpose of determining whether summary judgment is appropriate in this case, this Court will, therefore, assume that Plaintiff has met his burden in proving that he is a disabled person within the meaning of the law. Cf. Wells v. Shalala, 228 F.3d 1137, 1144-45 (10th Cir. 2000). (stating, "Assuming without deciding that Plaintiff's health problems with his arm constitute a disability within the meaning of the Act . . .").

Although the Court assumes that the Plaintiff is disabled, the Court finds that summary judgment is appropriate in this case because Plaintiff was not "otherwise qualified" for the position of boiler plant operator. McGeshick, 357 F.3d at 1150. Plaintiff was not discriminated against because of his weight. He simply failed to meet the minimum physical requirements of the position. Because he could not meet these requirements, Plaintiff was not "otherwise qualified" to be a boiler plant operator at the VA.

The Rehabilitation Act provides covered entities with the

8

right to make medical inquiries concerning their employees if the inquiry or examination is proven to be job-related and consistent with business necessity. 29 C.F.R. § 1630.14 (West 2009).¹ Here, the Cheyenne VA required medical examinations for all boiler plant employees on a yearly basis. Although the Plaintiff fell through the cracks of this regulation at first, that does not render the requirement superfluous. The Cheyenne VA, as well as the VHA Center for Engineering and Occupational Safety and Health (CEOSH), require yearly physical examinations of boiler plant employees to ensure that each employee "can safely carry[] out the duties of the positions." (Dep. Ex. #6 3.) Additionally, the physical examination ensures that the boiler plant operator is not at an "increased risk of becoming incapacitated while on duty in control

---

¹ The section cited refers to the Americans with Disabilities Act rather than the Rehabilitation Act. However, Congress amended the Rehabilitation Act in 1992 to state:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d) (West 2009). Therefore, the standards and regulations applying to the Americans with Disabilities Act will, likewise, apply to the Rehabilitation Act. Id.; see also 29 C.F.R. § 1614.203 (West 2009).

of a potentially explosive boiler." Id. The physical examination requirement is clearly justified under the Act's regulations.

Plaintiff's reassignment to housekeeping aide following his physical was, likewise, appropriate. As stated, the purpose of requiring physical examinations of boiler plant operators is to ensure the safety of the operators and others. Plaintiff's uncontrolled diabetes put him and others at an increased risk of injury or even death. (Johnson Dep. 47:2-8, Nov. 13, 2008.) Dr. Johnson testified, by deposition, that his primary concern was Plaintiff's uncontrolled diabetes rather than his obesity. (Johnson Dep. 42:16-17, Nov. 13, 2008.) According to Dr. Johnson, people who experience a hypoglycemic event can become disoriented or even lose consciousness. (Johnson Dep. 65:7-19, Nov. 13, 2008.) This would place Plaintiff at an increased risk of injuring himself on the job while climbing on ladders and other places off of the ground. (Johnson Dep. 39:15-23, 40:4-13, Nov. 13, 2008.) Additionally, it places others at an increased risk when he is alone in the boiler room. (Johnson Dep. 46:16-21, Nov. 13, 2008.) Elvin Wrede testified that if the boiler were to explode it would "would bring down the entire building." (Wrede Decl. ¶ 3, Dec. 5, 2008.) If Plaintiff were to experience a hypoglycemic event, and

10

an emergency occurred while he was incapacitated he would place an inordinate amount of people at risk of injury or even death. It is for these reasons that CEOSH lists "uncontrolled or poorly controlled insulin-dependent diabetes" as exclusionary for the position of boiler plant operator. For these reasons, the Plaintiff is not "otherwise qualified" for the position of boiler plant operator. See Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979) (stating "[L]egitimate physical qualifications may be essential to participation in particular [employment].") (stating "An otherwise qualified person is one who is able to meet all of the program's requirements in spite of his handicap.").

Plaintiff argues that there is a very small chance that the boiler will explode, and that Plaintiff should not be excluded from this position based on the small chance that an emergency of this nature will arise. The Court, however, is not convinced. Looking to other circuits, the Court finds that this case is similar to those of medical employees with HIV. See Bradley v. Univ. of Texas M.D. Anderson Cancer Ctr., 3 F.3d 922 (5th Cir. 1993); Scoles v. Mercy Health Corp., 887 F. Supp. 765 (E.D. Pa. 1994); Doe v. Washington Univ., 780 F. Supp. 628 (E.D. Mo. 1991). In those cases, the courts focused on the fact that although the possibility

11

of infecting another person with HIV may be small, the consequence of infection is lethal. The same is true here. Although there may be a small chance that the boiler's numerous safeties will not work, or that the Plaintiff will have a hypoglycemic event preventing him from timely responding to an emergency[2], these risks are still present. See Scoles, 887 F. Supp. at 771 (stating although the risk of infecting a patient with HIV may be small, "the parties agree that the risk exists"). And, like the cases cited above, if it does occur it will undoubtedly be disastrous for those people in the building. The risks are simply too great to ignore.

Plaintiff also argues that he was "otherwise qualified" to perform the duties required to be a boiler plant operator as evidenced by the fact that he had worked there for two years without any adverse incidents or reports. However, simply because the Plaintiff has not yet experienced any debilitating health issues while at work does not mean that it will not occur. As

---

[2] The Court would like to note that the chances of Plaintiff having an adverse event occur due to his poorly controlled diabetes while at work, is not small. Based on Plaintiff's medical records, he clearly has not controlled his diabetes, nor does he seem to have any desire to do so. In her medical notes, Dr. Popova wrote that Plaintiff was slowly committing suicide by refusing to comply with doctors' orders, and not working to control his diabetes. (Dep. Ex. # 12.)

12

shown from Plaintiff's medical records, his weight has continued to
increase. Additionally, he has continually refused to comply with
doctors' orders to control his diabetes. (Dep. Ex. # 11, 12.) As
Dr. Popova (Plaintiff's primary care physician during the time
period in question) stated, Plaintiff is on death row, and, this
Court believes, he will continue growing closer to his execution
date if he refuses to take care of his health. The Defendant is
not required to place others at the mercy of the Plaintiff and his
continually-deteriorating health. It was objectively reasonable
for the Defendant to determine that the Plaintiff posed a
substantial risk to himself and others. Jarvis v. Potter, 500 F.3d
1113, 1122-23 (10th Cir. 2007). The VA's decision to reassign
Plaintiff, therefore, was appropriate.

B. Accommodation

In addition to his discrimination claim, Plaintiff claims that
the Defendant refused to accommodate him in any way for his
disability. (Compl. ¶¶ 24-27.) It is true that the VA did not
purchase another ladder for the Plaintiff to accommodate his
obesity. However, that is not dispositive in this case because
safe accommodation of the Plaintiff was not possible. Dr. Johnson
testified that there is simply no way to accommodate a person for

13

this position who refuses to control his diabetes.   (Johnson Dep.
57:1-5, Nov. 13, 2008.)   Clearly, there is no way for the VA to
force the Plaintiff to control his diabetes.   Additionally, the
only way for the Defendant to safely accommodate a person with
poorly controlled insulin-dependent diabetes is to prohibit him
from climbing to places that are off of the ground, and to always
require Plaintiff to work with another individual in case of a
hypoglycemic event.   However, climbing on top of boilers and being
able to work alone are essential functions of the job.   The
Defendant is not required to reallocate job duties to change the
essential functions of the job simply to accommodate one
individual.   Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th
Cir. 1995).   Furthermore, the elimination of any of the job's
essential functions does not constitute a reasonable accommodation.
Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991), cited in Wells
v. Shalala, 228 F.3d 1137, 1145 (10th Cir. 2000).   Therefore, the
accommodations that the Defendant would have had to make with
respect to the Plaintiff as a boiler plant operator were not
reasonable, and the Defendant was not required to make unreasonable
accommodations.   Wells, 228 F.3d at 1145.

Additionally, although the Defendant was not able to

14

accommodate Plaintiff in such a way that would allow him to continue as a boiler plant operator, he was, in fact accommodated. Plaintiff's employment with the VA was not terminated, he was simply reassigned. As the Tenth Circuit has stated:

> [The ADA] requires the employer to use reasonable accommodation to keep the employee in his or her existing job, and if that cannot be accomplished, to use reasonable accommodation to offer a reassignment to another vacant job which that person would be qualified to perform with or without a reasonable accommodation. Once the employer has offered such a reassignment, its duties have been discharged.

Smith v. Midland Brake, Inc., 180 F.3d 1154, 1177 (10th Cir. 1999). The VA could not safely accommodate Plaintiff in his current position, so it offered Plaintiff a reassignment. Defendant's duty to accommodate Plaintiff was, therefore, discharged. Id.

C. ADEA

Finally, Plaintiff claims that he was unlawfully discriminated against in violation of the ADEA because of his age. (Compl. ¶¶ 28-32.) To make out a prima facie case for age discrimination in violation of the ADEA, the Plaintiff must prove that he was: "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." Adamson v. Multi-Comty. Diversified Servs.,

15

Inc., 514 F.3d 1136, 1146 (10th Cir. 2008). This Court, however, need not discuss the elements of the ADEA claim because, as explained above, Plaintiff was reassigned due to his inability to meet the minimum physical requirements that the boiler plant position demanded. In short, Plaintiff's reassignment had nothing to do with his age and everything to do with his health.

D. Plaintiff's Motion to Amend Complaint

Plaintiff seeks to have two new claims added to his Complaint. Plaintiff bases these two new claims on the actions of Dr. Johnson. When Dr. Johnson received the results of Plaintiff's physical examination he became concerned about whether the Plaintiff could perform the necessary functions of the position of boiler plant operator. Dr. Johnson also observed that Plaintiff had diabetes as listed on the results of the physical. Therefore, Dr. Johnson decided to look at the Plaintiff's personal medical records stored at the VA as a result of Plaintiff being treated there as a former veteran. These medical records did not pertain to any examinations performed as a result of Plaintiff's employment with the VA. When asked why he looked through the Plaintiff's personal treatment records, Dr. Johnson stated:

> When the physical exam done by Ann Enlow came through to
> my desk, it was evident to me that there potentially was

16

> going to be a problem with him meeting the functional
> requirements listed on his health form.   And the
> functional requirements for a boiler treatment or boiler
> plant operator is fairly extensive in terms of their
> ability to function.   And in addition to the weight and
> the blood pressure, I was knowledgeable that he had
> diabetes and so I wanted to see where things were in
> terms of his diabetes management.

(Johnson Dep. 16:15-24, Nov. 13, 2008.)   Plaintiff claims that Dr.

Johnson's investigation into Plaintiff's personal medical files was

a violation of the ADA and the Rehabilitation Act.   Additionally,

Plaintiff claims that Dr. Johnson violated the Privacy Act by

looking into these records without his permission.   Plaintiff only

learned of Dr. Johnson's action through discovery.   As a result,

Plaintiff did not originally plead these claims, but now requests

that the Court grant him leave to plead violations of the ADA,

Rehabilitation Act, and Privacy Act.

Under Federal Rule of Civil Procedure 15, a court may grant

leave to a party to amend his complaint if "justice so requires."

Fed. R. Civ. P. 15(a)(2).   Nevertheless, it is within a district

court's discretion to refuse amendment if it would be futile.

Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).    A

party's proposed amendment is futile "if the complaint, as amended,

would be subject to dismissal."   Bradley v. Val-Mejias, 379 F.3d

892, 901 (10th Cir. 2004).   Applying this standard to the current

17

case, the Court finds that Plaintiff's proposed amendments would be futile, and the Motion to Amend should, therefore, be denied.

1. *Violation of Rehabilitation Act and ADA*

In his Motion to Amend Complaint, Plaintiff points to violations of the ADA and the Rehabilitation Act pursuant to regulations 29 C.F.R. §§ 1614 and 1630.14. Looking to these cited regulations, the Court finds they set out the standards and procedures that an entity is required to use when it makes inquiries into the medical suitability of current and prospective employees to perform the requisite duties of a position. 29 C.F.R. § 1630.14 (West 2009).

The regulations caution entities to keep information learned from employment medical examinations "on separate forms and in separate medical files." Id. at §§ 1630.14(b)(1) & (c)(1). Additionally, the regulations require that this kind of medical information "be treated as a confidential medical record." Id. The plain language of these regulations require covered entities to keep information learned from *employment medical examinations* confidential and separate. Id. They do not address the confidentiality of *personal medical records* kept at the same place as an employee's employment medical records. This Court will not

18

read into regulations additional requirements for covered entities that are not specifically laid out by the regulation itself as requested by the Plaintiff. See Dodd v. United States, 545 U.S. 353, 359 (2005) (stating "we are not free to rewrite the statute that Congress has enacted"); see also Hartford Underwrites Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (stating "when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms" (internal quotations omitted)). Because the regulations address employment medical records and not personal medical records, they do not create a cause of action for the Plaintiff in this case. It would, therefore, be futile to allow amendment of Plaintiff's Complaint to include these claims.

### 2. Violation of the Privacy Act

The Plaintiff next contends that the Defendant violated the Privacy Act. The Plaintiff cites to 5 U.S.C. § 552(b). Initially, the Court would like to point out that 5 U.S.C. § 552(b) states only that the Freedom of Information Act does not apply to certain information including personnel and medical files. 5 U.S.C. § 552(b)(6) (West 2009). This statute does not create a cause of

19

action for the disclosure or dissemination of a person's personnel
or medical files.   It simply exempts certain information from the
Freedom of Information Act.   Id.

This Court looks to 5 U.S.C. § 552a(b) to determine if there
has been a violation of the Privacy Act in this case.   The statute
states:

> (b) Conditions of disclosure.--No agency shall disclose
> any record which is contained in a system of records by
> any means of communication to any person, or to another
> agency, except pursuant to a written request by, or with
> the prior written consent of, the individual to whom the
> record pertains, unless disclosure of the record would be
> -(1) to those officers and employees of the agency which
> maintains the record who have a need for the record in
> the performance of their duties . . .

5 U.S.C. § 552a(b)(1) (West 2009).   In interpreting this statute,
the Tenth Circuit has looked to the Joint House and Senate Report
("the Report").   Pippinger v. Rubin, 129 F.3d 519, 529 (10th Cir.
1997).   In Pippinger v Rubin, the Tenth Circuit quoted from the
Report stating that, "a primary purpose of 5 U.S.C. § 552a(b) is
to:

require employees to refrain from disclosing records or personal
data in them, within the agency other than to officers or employees
who have a need for such record or data in the performance of their
duties for the agency."   Id. (citing S. Rep. No. 93-1183, H.R. Rep.

20

No. 93-1416, at 51 (1974)).

Turning to the current case, Dr. Johnson clearly had a need for the personal medical records of Plaintiff. He was attempting to determine whether the Plaintiff was physically able to perform the duties the position. Dr. Johnson was aware that if Plaintiff had poorly controlled or uncontrolled insulin dependent-diabetes, he would be excluded from the boiler plant position based on the CEOSH regulations. There was no way for him to determine how well the Plaintiff was controlling his diabetes without access to Plaintiff's medical records. (Cf. Wilkerson Dep. 104:4-8, Nov. 12, 2008 (denying that his diabetes were uncontrolled contrary to medical record).) Dr. Johnson had a need for those records, and he was acting in the performance of his duties in looking at them to determine whether Plaintiff was fit for the position of boiler plant operator. (See Johnson Dep. 14:7-9, Nov. 13, 2008 (stating that his access to the records was on a need-to-know basis).) Based on the foregoing discussion it would be futile to grant the Plaintiff leave to amend his complaint to include this claim. For these reasons Plaintiff's Motion to Amend Complaint is denied.

## IV. CONCLUSION

NOW THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion

for Summary Judgment is GRANTED.   It is further ordered that
Plaintiff's Motion to Amend Complaint is DENIED.


Dated this _____ day of February 2009.


UNITED STATES DISTRICT JUDGE